AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) |
| --- | --- |
| v. | ) |
| ERIN S. BROWN | ) Case No. 18-cr-284 |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| Defendant | ) |

*USMS NORTHERN ALABAMA RECEIVED 2018 OCT 24 A 11:12*

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* Erin Susan Brown ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Violation of 18 USC § 1512(c)(2) by attempting to obstruct, influence, or impede a forseeable official proceeding.

Date: October 24, 2018

*[Signature]*
Issuing officer's signature

City and state: BIRMINGHAM AL
T. MICHAEL PUTNAM, USMJ

**DO NOT EXECUTE THIS COPY**
COPY  COPY  COPY
ORIGINAL WARRANT HELD BY
UNITED STATES MARSHAL SERVICE
BIRMINGHAM, AL (205) 307-7302
PLEASE CONTACT USMS UPON ARREST

Case 6:18-mj-00176-JHE Document 1 Filed 10/25/18 Page 2 of 15

Case 2:18-cr-00284-TMP Document 1 Filed 10/25/18 Page 2 of 14 PageID 2

FILED
2018 Oct-24 PM 05:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) |
| v. | ) |
| ERIN S. BROWN | ) Case No. |
| | ) 18-cr-284 |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 7, 2018 until the present in the county of Winston and Jefferson in the Northern District of Alabama , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC § 1512(c)(2) | Attempting to obstruct, influence, or impede a forseeable official proceeding. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Kyle King, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 24, 2018

_____
Judge's signature

City and state: Birmingham, AL.

T. MICHAEL PUTNAM, USMJ
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

1. I, Kyle A. King, having being duly sworn, hereby depose and state:

2. I am an investigative and law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been assigned in this capacity since December 2017. Since being assigned to the FBI's Birmingham Division, I have been assigned matters related to health care fraud. I am familiar with, and have employed various methods of investigation, including, but not limited to, review of evidence, visual surveillance, witness interviews, and the execution of search warrants. I am involved in investigations focused on health care fraud, including pharmacies, durable medical equipment, receipt and payment of kickbacks, and money laundering. I have discussed various techniques used by health care fraudsters, including but not limited to, billing for services not provided and billing for unnecessary services, with other law enforcement agents with extensive experience investigating health care fraud.

4. This Affidavit is written in support of a criminal complaint charging ERIN SUSAN BROWN with obstructing, influencing, or impeding an official proceeding, in violation of Title 18 U.S.C. §1512(c)(2).

5. The facts and information contained in this Affidavit are based upon my knowledge and observations, information received from other agents of the Federal Bureau of Investigation, agents of the United States Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), and other federal agencies working on this investigation, and information gained from my training, experience, and review of pertinent statutes and case law. This Affidavit is being submitted for the limited purpose of establishing probable cause that BROWN has engaged in the crime enumerated above, and I have not included each and every fact known to me concerning this investigation. I have set forth the facts and circumstances that I believe are necessary to establish probable cause to obtain a criminal complaint.

6. I submit that this affidavit sets forth sufficient facts to establish probable cause to believe that, from at least September 7, 2018 through October 22, 2018, BROWN did corruptly attempt to obstruct, influence, and impede a foreseeable official proceeding—to wit: a proceeding in the Northern District of Alabama before a court of the United States and a Federal grand jury, involving **ERIN S. BROWN's** conduct relating to health care fraud, wire fraud, and mail fraud—by requesting repayment of a $10,000 payment paid by **ERIN S. BROWN** to **Dr. M.F**, a doctor, so that both parties could deny the original purpose of the $10,000 payment, and by requesting $1,500

2

from **Dr. M.F** to assist **ERIN S. BROWN**'s flight from the United States to a foreign country for purposes of avoiding the official proceeding all in violation of U.S.C. § 1512(c)(2).

Tampering with an Official Proceeding – 18 U.S.C. § 1512(c)(2)

7. Section 1512(c)(2) of Title 18 makes it crime for "[w]hoever corruptly ... otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." An official proceeding is defined, in relevant part, as "a proceeding before a judge or court of the United States, ... or a Federal grand jury ...." 18 U.S.C. § 1515(a)(1)(A).

8. The elements of § 1512(c)(2) are: (1) an official proceeding; (2) "conduct which constituted a substantial step toward the commission of the crime of obstruction of an official proceeding"; (3) acting corruptly, *i.e.*, "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct" the official proceeding; and (4) the natural and probable effect of the defendant's conduct "would be the interference with the due administration of justice." *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (quotations and citations omitted).

9. An official proceeding "need not be pending or about to be instituted at the time of the offense ...." 18 U.S.C. § 1512(f)(1). The government must,

3

however, prove that the official proceeding was foreseeable to the defendant. *Friske*, 640 F.3d at 1292.

Global Compounding Pharmacy Investigation

10.  Global Compounding Pharmacy (hereinafter "Global"), described itself as "one of the top three largest compounding pharmacies in the United States." It primarily shipped compounded and other drugs from its Haleyville, Alabama facility, but did most of its prescription processing, billing and customer service at its "call center" in Clearwater, Florida. Global hired sales representatives who were located in various states (including Florida) and were responsible for generating prescriptions from physicians and other prescribers. Global paid its sales representatives a commission based on the reimbursement Global received from the prescriptions each sales representative generated.

11.  The FBI and other federal agencies have been investigating Global for several years. That investigation indicates that Global had a multi-faceted scheme that focused on obtaining and billing for high-dollar fraudulent prescriptions. In the scheme, Global would identify high-dollar drugs and instruct employees to obtain medically unnecessary prescriptions for themselves and family members. Global incentivized prescribers to issue these fraudulent prescriptions, including by hiring and paying their family members as sales representatives, and by directing sales representatives to work at practitioners' offices to have better access to patients

4

and their files. Global employees obtained prescriptions in various other fraudulent ways, including forging prescriptions. Global maximized proceeds on these fraudulent prescriptions by altering them to add or substitute drugs and by automatically refilling and billing for them, regardless of patient need. It also routinely waived co-pays to encourage patients to accept unnecessary medications and refills. When insurance plans and their prescription drug managers attempted to police Global's conduct, Global provided false and misleading information to them, and began billing through affiliate pharmacies. The above summary does not describe every aspect of the scheme.

12. To date, fifteen individuals have been charged (by information) and pleaded guilty in the ongoing investigation.

Summary of Obstruction Committed by BROWN

13. BROWN worked for Global as a sales representative located in Florida from approximately July 2015 until late December 2015. BROWN's commissions payments primarily were made off the prescriptions of Dr. M.F. and Dr. F.C., located in Ft. Myers and St. Petersburg, Florida, respectively. In a separate investigation out of the Middle District of Florida, Dr. M.F. has been charged and has pleaded guilty to two counts of conspiracy to receive unrelated

5

healthcare kickbacks, in violation of 18 U.S.C. § 371. His plea agreement includes an agreement to provide cooperation to the government.

14. On or about December 18, 2015, BROWN made a currency withdrawal from her Wells Fargo account *9833 of $10,500.

15. On or about July 19, 2017, BROWN was served with a Target Letter from the United States Attorney's Office, Northern District of Alabama via email, receipt of which was confirmed via emails and a recorded voicemail message on the same date. The Target Letter informed BROWN that she was a target of a criminal investigation into her conduct relating to health care fraud, wire fraud, and mail fraud. The letter stated in part, "A 'target' is a person as to whom a prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a possible defendant."

16. The government took the unusual step of serving BROWN with the Target Letter via email because her physical whereabouts were then unknown, and they remain so.

17. In an email dated July 19, 2017, in response to receiving the Target Letter and being asked to provide a physical address, BROWN informed an HHS-OIG Special Agent that "I will be out of the county within the next three to six months but I am not sure I and when I will even be leaving. But it's a vacation that's been planned for…". No physical address was provided.

6

18. In another email dated July 19, 2017, BROWN wrote to an HHS-OIG Special Agent "In regards to my whereabouts. I do however plan to travel sometime in the near future, but I'm not out of the country. I am not sure when this will take place." BROWN again failed to provide a physical address.

19. On August 2, 2017, BROWN emailed a financial affidavit to a HHS-OIG agent in an attempt to have counsel appointed to represent her as a Target of the ongoing investigation. BROWN was told that the original affidavit would be needed for the court and was provided the address where to send the original. The original financial affidavit was never received by the government.

20. In or about early September 2018, BROWN texted, Dr. M.F., whose prescriptions for Global products BROWN received a commission on while employed by Global. After initiating the text conversation, BROWN texted "Having to go to court over that entire BS", to which Dr. M.F. "Best of luck. Have faith".

21. On September 7, 2018, BROWN initiated another text conversation with Dr. M.F. in which she wrote "So I need a favor or something I need some $. They are offering me quite a large amount to do something and it's not what I'm wanting in the slightest. But do need help if you can help me and we can square things up! I will be in town in person tm or the following day if you want to meet me for a drink. I'm not joking this is not something we should be playing around w

7

I am stressed to the max!!". After receiving no response from Dr. M.F., BROWN texted "Call me tm it's urgent".

22. On September 7, 2018, after forwarding the above text messages to the government, Dr. M.F. consented to make a recorded telephone call with BROWN. (During a prior proffer with the Middle District of Florida, Dr. M.F. stated that BROWN offered to pay him $10,000, but he stated he declined the payment. Subsequent to the proffer but prior to the recorded call, Dr. M.F's attorney proffered to the government that Dr. M.F. accepted a cash kickback from BROWN in return for writing prescriptions.)

23. On or about September 7, 2018, Dr. M.F. made a consensually recorded telephone call with BROWN in which BROWN advised that she was out of the country for the last few months "trying avoid this fiasco . . . cause I had the FBI calling all my friends" and family. BROWN advised that she went to Europe, New Zealand, and Southeast Asia. BROWN asked Dr. M.F. if he had heard what was going on. BROWN stated that a bunch of people had taken plea deals and one person might have been sentenced to seven years. BROWN then stated "long story short, I need to get that money back or else we are going to be in a world of (pause) yeah". BROWN told Dr. M.F. that is was not worth losing his medical license over. When BROWN advised that she wanted to have a clear conscience and it was the wisest decision, Dr. M.F. stated "the ten grand back you gave me?"

8

BROWN responded, "yes", and then "I won't have to lie about anything".

BROWN then attempted to set up a time to meet Dr. M.F. to get the money the following week. BROWN concluded that she does not want to go to prison.

24. On or about September 8, 2018, BROWN sent Dr. M.F. a series of text messages:

- "I will actually be coming to Ft Myers Tm to see you. This needs to be over and done with Bc I can't sleep and have had some much anxiety over this. I need a clean Conscience, so under Oath I have nothing to hide!! You can call me in the morning. But we can also hang out if you want afterwards. I just want all of this behind you and I. Major learning lesson. The banks are open until noon."

- Followed by "Call me when you wake up. We will talk in person as well about things. But someone is trying to screw u over."

- Followed by "[Dr. M.F] I have been honest with you this entire time and I'm being honest now! This isn't something either of us want to mess around with. And I'm exhausted I do not want to have to think about this shit another day. It's not that much in the big picture! We need to talk in person Bc then you will see why I am so stressed!".

- Followed by "Sorry I am not trying to stress you out. Call me when you can. I'm heading to Tampa for the rest of the wkend and next Wk regardless.

- Followed by "Did you know that this is the largest medical ins fraud investigation ever? I had no idea! The pharmacy is the one is on big trouble/owners."

- Followed by "[Dr. M.F.] I need to know what day I can see you? I'm getting super annoyed with all of this. Not sure if you have heard of Avitus Group but they are trying to get us to throw people under the table. I have no idea who they are but they are scaring the shit out of me."

9

25. On or about the same day as this flurry of text messages from BROWN, Dr. M.F. made a consensually recorded telephone call with BROWN. During that call, BROWN advised that "they" are coming after her and that a "mediation type of thing" with a judge is occurring this week.

26. On or about September 13, 2018, Dr. M.F. made another consensually recorded call with BROWN. Dr. M.F. asked BROWN whether paying her back the $10,000 actually made it worse for her and asked whether "they" track her bank. BROWN states she would rather say [the money] wasn't for "those purposes". BROWN admitted that the $10,000 came from her bank account. BROWN admitted that she and another Global sales representative, B.A. (who has been informed via counsel that she is also under investigation) are communicating about the investigation. BROWN stated that the FBI was calling her friends, her mom, and a guy she used to date. BROWN further stated that the guy she used to date did not tell the FBI anything because he was a good friend. BROWN stated that she "is never doing it again". BROWN stated she cannot get a job in the medical field since Global is on her resume, and when potential employers look Global up, they see that Global is under investigation.

27. On or about September 14, 2018, BROWN sent Dr. M.F a series of text messages:

- "I just want all this behind us both but you have to do what your comfortable with".

10

- Followed by "I know this isn't your first rodeo w things like this".

- Followed by "Hey can I pick that up on Monday please please? I wouldn't even say or mention it if it wasn't important".

- Followed by "I wish you would read between the lines Dr. Frey".

28. On or about October 3, 2018, BROWN texted Dr. M.F. "Do you think we can meet up Tuesday the 9th. I can come that way towards you"

29. On or about October 10, 2018, BROWN texted Dr. M.F. "Dr [M.F.] can we come to some kind of agreement on this?"

30. On or about October 14, 2018, in response to a text from Dr. M.F. stating "My attorney is not allowing me to comment," BROWN texted Dr. M.F. "Do you remember when you called me in the beginning all panicked and you said I'll give you all the 10k back plus more? Anyways it's clear this isn't the first time this has happened to you. But I've got to choice other than to confess and let them know I paid you $10k to prescribe. If you want I will go directly through your attorney. If you want to share his email that would be great! I'm just not going to be the only one who gets screwed on this matter".

31. On October 20, 2018, BROWN texted, "Dr [M.F.] I need To borrow $1500 and It's serious. I would not ask if I knew another friend to ask, not trying to pull a anything on you, but if it all goes trough I'll leave it alone and It all be in the

11

PasT! Plus I'll beZealand[1] for good.. this can be between just us! No attorney! My god say them I gave you a blow job....which this is possible for It could be the tm night lol". Followed by "I mean you know we could have a little fun".

32. On or about October 20, 2018, BROWN texted Dr. M.F. a copy of her Target letter (*see* ¶ 16, above), followed by the text "This lady will not stop calling me!!"[2]

33. On October 22, 2018, at the direction of the government, Dr. M.F. sent BROWN the following text "Hey there is. Good possibility I can get you the money Friday. Will that be ok?" BROWN responded, "I can come today or tm and Wednesday would be pushing it!"

34. Based upon facts and circumstances described above, I submit probable cause exists to believe that BROWN did corruptly attempt to obstruct, influence, and impede a foreseeable official proceeding—to wit: a proceeding in the Northern District of Alabama before a court of the United States and a Federal grand jury, involving **ERIN S. BROWN's** conduct relating to health care fraud, wire fraud, and mail fraud in connection with Global Compounding Pharmacy—by requesting repayment of a $10,000 payment paid by **ERIN S. BROWN** to **Dr. M.F.**, a doctor, so that both parties could deny the original purpose of the $10,000

---

[1] This appears to be a reference to New Zealand, a country to which BROWN stated she had traveled to previously. (*See* ¶ 23, above.).

[2] No one from the government associated with the Global investigation case has attempted to call BROWN since the beginning of 2018.

12

payment and by requesting $1,500 from **Dr. M.F.** to assist **ERIN S. BROWN's** flight from the United States to a foreign country for purposes of avoiding the official proceeding all in violation of 18 U.S.C. § 1512(c)(2).

_____
SPECIAL AGENT KYLE A. KING
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me this 24th day of October, 2018

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

13